UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANIEL THOMAS,

        Plaintiff,

    v.                                 17-CV-1050-LJV-HBS
                                                  DECISION & ORDER

THE BUFFALO CLUB,

        Defendant.

---

On October 18, 2017, the *pro se* plaintiff, Daniel Thomas, filed a complaint asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII").[1] Docket Item 1. On January 11, 2019, the defendant, The Buffalo Club ("the Club"), answered the complaint, Docket Item 11, and moved to dismiss under Federal Rule of Civil Procedure Rule 12(c), Docket Item 12.

On July 17, 2019, Thomas filed an affidavit in opposition to the Club's motion to dismiss, Docket Item 30, and on August 6, 2019, the Club replied, Docket Item 31. On August 28, 2019, Thomas filed a sur-reply affidavit, Docket Item 35; on September 4, 2019, the Club responded to Thomas's sur-reply, Docket Item 38; and on September 11, 2019, Thomas replied, Docket Item 39.

On October 3, 2019, the Court notified the parties that it planned to convert the Club's motion to dismiss into a motion for summary judgment under Federal Rule of

---

[1] The complaint also asserted claims under the Age Discrimination Act of 1967 ("ADEA"). On November 14, 2018, the Court issued a screening order, *see* 28 U.S.C. § 1915(e)(2)(B), dismissing Thomas's ADEA claims unless he amended his complaint within forty-five days of that order, Docket Item 9. Thomas did not do so, and his ADEA claims therefore were dismissed.

Civil Procedure 56.  Docket Item 41.  The Court gave both sides time to file additional materials that they wished the Court to consider consistent with a summary judgment motion.  *Id.*

On October 23, 2019, Thomas moved to amend the complaint to add Employer Services Corporation ("ESC") as a defendant, Docket Item 42, and filed a proposed amended complaint, Docket Item 43.  On November 4, 2019, the Club filed a memorandum in support of its motion for summary judgment, Docket Item 46, and the affidavit of the Club's general manager, Daniel Moriyama, with exhibits ("Moriyama affidavit"), Docket Items 46-1-46-16, 48.   And on November 12, 2019, the Club responded to the motion to amend.  Docket Item 50.

On November 15, 2019, Thomas filed a motion *in limine* to exclude the Moriyama affidavit and its accompanying exhibits, Docket Item 51; on November 22, 2019, the Club responded to the motion *in limine*, Docket Item 53.

On November 25, 2019, the case was referred to United States Magistrate Judge H. Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B).  Docket Item 54.  On November 30, 2020, Judge Schroeder issued a Report, Recommendation, and Order ("RR&O").  Docket Item 60.  Judge Schroeder specifically found that (1) Thomas's motion to amend the complaint should be denied as futile, *id.* at 6; (2) Thomas's motion *in limine* should be denied because the Moriyama affidavit is admissible as the affidavit of a corporate representative witness, *id.* at 8; and (3) the Club's motion for summary judgment should be granted because it is a *bona fide* private membership club exempt from Title VII, *id.* at 11-12.  On December 15, 2020, Thomas objected to the RR&O, arguing that because ESC—which is not a *bona fide* private

membership club—was his employer during the relevant time period, he should be permitted to pursue his complaint against ESC.[2]  Docket Item 63.  On January 6, 2021, the Club responded to Thomas's objection.[3]  Docket Item 66.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the RR&O; the record in this case; the objection and response; and the materials considered by Judge Schroeder.  Based on that *de novo* review, the Court accepts and adopts Judge Schroeder's recommendation to deny Thomas's motion to amend and motion *in limine* and to grant the Club's motion for summary judgment.[4]

---

[2] Thomas did not specifically object to any of Judge Schroeder's substantive findings.  *See* Docket Item 63.  Due to Thomas's *pro se* status, however, the Court construes his objection as liberally as possible to object to each of the recommendations made in the RR&O.  *See Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest).  Thomas also "asks the Court to reconsider its denial of [his] request for appointment of counsel and to reconsider an ADR Hearing."  Docket Item 63 at 4.  Because the Court accepts and adopts the RR&O in its entirety and grants the Club's motion for summary judgment, these requests are denied as moot.

In addition to filing objections, Thomas filed a motion to object to the RR&O.  Docket Item 64.  Thomas did not need to do so, and the Court denies that motion as moot.

[3] The Club argues that Thomas's objections were one day late, Docket Item 66 at 1-2, and procedurally defective, *id.* at 2-3.  Especially because Thomas is proceeding *pro se*, the Court rejects those arguments and considers his submissions on their merits.

[4] The Court assumes the reader's familiarity with the facts alleged in the complaint, *see* Docket Item 1, and the proposed amended complaint, Docket item 43,

3

**DISCUSSION**

I.  **MOTION TO AMEND**

Judge Schroeder found that Thomas's motion to amend the complaint to add ESC as a defendant should be "denied as futile" because the "proposed amended complaint asserts no factual allegations against ESC." Docket Item 60 at 4, 6. This Court agrees.

Although courts "freely" grant leave to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend should be denied when the party seeking to amend has acted in bad faith, when the amendment would unfairly prejudice the opposing party, or when the proposed amendment would be futile. *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Thomas moved to add ESC as a defendant because he had learned "that for the year 2016[, he] was employed by [ESC]," Docket Item 42 at 3, an outsourced human resources firm, *see* Docket Item 60 at 5 (citing https://myesc.com). When two or more entities control different aspects of a plaintiff's employment, both may face Title VII liability under the "joint employer" doctrine. *Lima v. Adecco and/or Platform Learning, Inc.*, 634 F. Supp. 2d 394, 399 (S.D.N.Y. 2009), *aff'd*, 375 F. App'x 54, 55 (2d Cir. 2010). For a joint employer to be liable, however, "the plaintiff must [] show 'that the joint employer knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control.'" *Id.* (second alteration in original) (citing *Watson v. Adecco Empl. Servs., Inc.*, 252 F. Supp. 2d 1347, 1356-57 (M.D. Fla. 2003)).

---

as well as Judge Schroeder's analysis in the RR&O, *see* Docket Item 60, and refers only to the facts necessary to explain its decision.

4

The proposed amended complaint makes no factual allegations against ESC. *See* Docket Item 43. Rather, Thomas alleges that he was harassed and discriminated against only by Club employees and that only the Club's response was inadequate. *See id.*

More specifically, Thomas alleges that two of the Club's maintenance workers sexually harassed him and discriminated against him based on what they perceived was his sexual orientation. *Id.* at 4, 13 16-18. He reported the harassment to the Club's human resources manager, who then reported what was going on to the Club's general manager. *Id.* at 16. The general manager warned the two maintenance workers, but they nonetheless continued to harass Thomas. *Id.* at 16-17. Thomas again reported the continued harassment to the human resources manager, who this time reported the harassment to the Club's president. *Id.* at 17. Thomas then was put on "paid leave" while the two maintenance workers "continue[d] to work at the [C]lub." *Id.* at 18. Thomas eventually resigned from the Club because of the harassment and the Club's response. *Id.* at 26.

Missing from the proposed amended complaint is any allegation that Thomas reported the harassment to ESC or that ESC knew or should have known about the harassment yet failed to intervene. *See Lima*, 634 F. Supp. 2d at 400. Indeed, in his objections to the RR&O, Thomas explicitly asserts that he was directed *not* to report claims of harassment and discrimination to ESC but to report all such claims only to the Club's management. *See* Docket Item 63 at 1-2. The proposed amended complaint therefore does not state a claim against ESC under the "joint employer" doctrine. *See Lima,* 634 F. Supp. 2d at 400.

5

Moreover, even if the proposed amended complaint alleged ESC's knowledge of the harassment and failure to act, the amendment still would be futile because Thomas has not exhausted his administrative remedies as to ESC.  "It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court."  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).  Thomas did not even begin to pursue any administrative claim against ESC.  *See* Docket Item 42 at 5 (amended complaint relying on EEOC right to sue letter issued as to the Club); Docket Item 43 at 12, 25-29 (same).  And neither of the equitable defenses that could excuse Thomas's failure to exhaust his administrative remedies—futility and "reasonable relatedness"—apply here.  *See id.* at 386.

The equitable defense of futility is available when "an agency has previously 'taken a firm stand' against a plaintiff's position.'"  *Id.* (citing *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997)).  In *Fowlkes*, for example, the plaintiff alleged that his union discriminated against him for being transgender.  *Id.* at 381-82.  The Second Circuit suggested that Fowlkes's failure to exhaust his administrative remedies might be excused as futile because "[w]hen Fowlkes filed his 2011 complaint, the EEOC had developed a consistent body of decisions that did not recognize Title VII claims based on the complainant's transgender status."  *Id.*  In contrast, Thomas alleges that he was sexually harassed and discriminated against on the basis of his sex and perceived sexual orientation, which are recognized by the EEOC as legitimate bases for claims.  *See* Docket Item 43 at 14 (including form sections for discrimination based on "Sex" and "Sexual Orientation").  So exhaustion was not futile.

The equitable defense of reasonable relatedness also does not apply. A later claim of discrimination is reasonably related "to the discrimination about which [the plaintiff] ha[s] filed an earlier charge with the EEOC," *Fowlkes*, 790 F.3d at 386, when (1) "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) "the complaint is 'one alleging retaliation by an employer against an employee for filing an EEOC charge'"; and (3) "the complaint 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge,'" *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (citations omitted).

Thomas has not satisfied any of these factors. Thomas does not allege that ESC—or the Club, for that matter—retaliated against him for filing an EEOC charge, nor does he allege discrimination by ESC "carried out in precisely the same manner" as by the Club. *See generally* Docket Item 43. Any allegation that ESC knew of but failed to remedy the harassment would not fall "within the scope of the EEOC investigation," *see Terry*, 336 F.3d at 151, because at the time Thomas reported the harassment to the EEOC, Thomas did not even know that ESC was one of his employers, *see* Docket Item 42 at 3 (Thomas explaining that he learned ESC was his employer during discovery in this case). And it does not appear that the EEOC knew about ESC either: the decision by the New York Division of Human Rights—which investigated Thomas's complaint—makes no mention of ESC as an entity nor does it indicate that it interviewed anyone from ESC, *see* Docket Item 43 at 25-27. ESC's involvement therefore was not within the scope of any prior investigation. *See Terry*, 336 F.3d at 151.

7

Because neither equitable defense to exhaustion applies, Thomas's failure to exhaust his administrative remedies as to ESC is a second, independent reason that his proposed amendment would be futile. Thomas's motion to amend therefore is denied.

## II.     MOTION *IN LIMINE*

Thomas moved to exclude the Moriyama affidavit because Moriyama was not the general manager while Thomas was employed at the Club and therefore lacked personal knowledge of the Club's policies and procedures during that time. *See* Docket Item 51 at 3. Thomas also moved to exclude the exhibits accompanying the Moriyama affidavit under Federal Rule of Evidence 407. *Id.* at 4.

Judge Schroeder recommended denying Thomas's motion because the Moriyama affidavit is admissible as the affidavit of a corporate representative witness. Docket Item 60 at 8. This Court agrees. It is "axiomatic that a corporate representative may testify and submit affidavits based on knowledge gained from a review of corporate books and records." *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016) (citing *Harrison-Hoge Indus., Inc. v. Panther Martin S.R.L.*, 2008 WL 905892, at *28 (W.D.N.Y. Mar. 31, 2008)). As Judge Schroeder correctly observed, "[the] Moriyama[] affidavit is based upon [the Club's] constitution, bylaws, tax returns and internal policies, memorandums and event records." Docket Item 60 at 8. Because the Moriyama affidavit "is based upon knowledge gained from [Moriyama's] review of corporate books and records," it therefore is admissible as the affidavit of a corporate representative witness. *See id.* And for that reason, Thomas's motion *in limine* to exclude the Moriyama affidavit is denied.

Judge Schroeder did not explicitly address Thomas's objection to the exhibits, which Thomas argues are inadmissible under Federal Rule of Evidence 407. *See* Docket Item 51 at 4. Rule 407 provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. As the Second Circuit has explained, "Rule 407 speaks . . . to the admissibility of evidence of *post-accident design changes*" and "is prompted by the fear that people will be less likely to take subsequent remedial measures if evidence of their repairs or improvements may be used against them in lawsuits arising out of prior accidents." *Cann v. Ford Motor Co.*, 658 F.2d 54, 59 (2d Cir. 1981) (emphasis added).

The exhibits that Thomas seeks to exclude are not evidence of subsequent remedial measures offered to prove negligence or other culpable conduct. *See* Docket Items 46-2-46-16; Docket Item 48. Rather, they are various policies of the Club on hosting events and membership selection, the Club's tax returns, and the like, and they are offered by the Club to support its argument that it is a *bona fide* private membership club. *See* Docket Item 46 at 3-15. Rule 407 simply is inapplicable here.

What is more, some of these exhibits were first offered by Thomas himself in his opposition to the Club's motion to dismiss. *Compare* Docket Item 30 at 42 (July 14, 2019 event list submitted by Thomas), *with* Docket Item 46-3 at 2 (July 14, 2019 event list submitted by the Club); *compare* Docket Item 30 at 45 ("Staff Membership Report"

9

submitted by Thomas), *with* Docket Item 46-14 at 2 ("Staff Membership Report" submitted by the Club).  And Thomas offers no reason why these same documents should be admissible when offered by him to prove that the Club is not a *bona fide* private membership club but simultaneously inadmissible when offered by the Club to prove that it is.  Therefore, Thomas's motion *in limine* to exclude the exhibits is denied.

### III.   MOTION FOR SUMMARY JUDGMENT

Judge Schroeder found that the Club's motion for summary judgment should be granted because there is no material factual dispute that the Club is a *bona fide* private membership club.  *See* Docket Item 60 at 11-12.  This Court again agrees.

"A court may grant summary judgment only where 'there is no genuine issue as to any material fact.'"  *Williams v. Wood*, 375 F. App'x 98, 100 (2d Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)).  "A genuine issue of material fact exists where 'a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010)).  "To make this determination, a court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Id.* (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996).

Title VII prohibits employers from discriminating against employees on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  "[B]*ona fide* private membership club[s]" exempt from taxation under 26 U.S.C. § 501(c), however,

are not "employers" under Title VII.[5]  *See* 42 U.S.C. § 2000e(b)(2).  An organization is a *bona fide* private membership club if "(1) it is a club in the ordinary and common meaning of that word; (2) it is private; and (3) it requires meaningful conditions of limited membership."  *EEOC v. Chicago Club*, 86 F.3d 1423, 1433 (7th Cir. 1996) (citing EEOC Policy Statement: Bona Fide Private Club Exemptions, Notice N-915, at N:3172 (July 22, 1986), *contained in* 2 EEOC Compliance Manual § 605, at 605-25); *see also Baptiste v. Cavendish Club Inc.*, 670 F. Supp. 108, 110 (S.D.N.Y. 1987) (citing *Quijano v. Univ. Fed. Credit Union*, 617 F.2d 129, 131 (5th Cir. 1980)).  To determine whether a club is indeed "private," the EEOC considers "(1) the extent to which it limits its facilities and services to club members and their guests; (2) the extent to which and/or the manner in which it is controlled or owned by its membership; and (3) whether, and, if so, to what extent and in what manner[,] it publicly advertises to solicit members or to promote the use of its facilities or services by the general public."  *Id.*

Thomas argues that the Club cannot be considered private because nonmembers and employees may host events at the Club and may use its amenities, such as the spa and gym.  Docket Item 30 at 2-3.  Thomas also argues that Club membership is not genuinely "limited" because the Club employs a "Director of Membership Development" and has encouraged employees to help with its recruitment efforts.  *Id.* at 3.  The Court disagrees on both fronts.

The Club's policies provide that while nonmembers may host events, they may do so only "if they are sponsored by a member."  *See* Docket Item 46-2 at 2 ("As a

---

[5] The parties both have submitted tax returns demonstrating that the Club is tax exempt under 26 U.S.C. § 501(c)(7).  *See* Docket Item 30 at 8; Docket Item 46-7 at 2.

11

private [c]lub, The Buffalo Club is available for all members. Non[]members may use the event space if they are sponsored by a member and comply with all Club policies."). In addition, the "sponsoring member" must "vouch[] for the good character of the sponsored guest and guarantee[] financial responsibility for all charges." *Id.* So the fact that nonmembers may host certain events does not make the Club an employer for Title VII purposes. *See Chicago Club*, 86 F.3d at 1435-46 (explaining that the fact that guests could visit the club only at the invitation of members and that members "ultimately [were] responsible" for paying for nonmember events were signs that the club was private).

The July 14, 2019 event list that Thomas submitted, *see* Docket Item 30 at 42, does not suggest otherwise: the events on that list were either member-held or member-sponsored, *see* Docket Item 46-1 at 2-4. Indeed, Thomas's submissions concede that nonmember events were in fact sponsored by members of the Club. *See* Docket Item 35 at 4-5; Docket Item 39 at 3.

Thomas asserts that during manager meetings, members sometimes were "random[ly] assign[ed]" to nonmember events; according to Thomas, this practice essentially opened the Club up to the public. *See* Docket Item 35 at 4. But even assuming that Thomas's assertion is true, a few instances in which members were asked or assigned to sponsor nonmember events would not destroy the exclusiveness of the Club for Title VII purposes. After all, the sponsoring members still had to financially guarantee the events and attest to the nonmembers' good character. Docket Item 46-2 at 2. And courts have found organizations to be *bona fide* private membership clubs even when they sometimes held unsponsored nonmember events.

*See Chicago Club*, 86 F.3d at 1436 (occasional instances of non-sponsored outside events insufficient to destroy club's status as a *bona fide* private membership club); *Bommarto v. Grosse Pointe Yacht Club*, 2007 WL 925791, at *10 (E.D. Mich. Mar. 26, 2007) (same). So the Club's hosting a few events that were sponsored by a member who did not have a personal connection to the event or its attendees does not mean that the Club was open to the public. For the same reason, the fact that Thomas's wedding was held at the Club, possibly without a sponsor, [6] also does not destroy the private nature of the Club.

Similarly, the Club still is a *bona fide* private membership organization even though nonmember guests and employees may use certain amenities on a limited basis. Nonmember guests "MUST be sponsored by a member to use the [s]pa," Docket Item 46-1 at 6 (emphasis in original), and may use gym facilities only with a member and no more than twice a month, Docket Item 46-10 at 2.

Contrary to the premise underlying Thomas's arguments, there simply is no legal requirement that a *bona fide* private membership club serve *only* dues-paying members *all the time*. *See* Docket Item 35 at 6 ("The [Club] prides itself on its exclusive, 'private' status; however, when its facilities are used and enjoyed by others who are not dues-paying members, it simply cannot be considered truly 'private.'"). In fact, the EEOC's own guidelines expressly contemplate that private clubs open their doors to both

---

[6] The Club asserts that a member probably did sponsor Thomas's wedding, but it has no documentary proof one way or the other. *See* Docket Item 46-1 at 5, n.2 (Moriyama explaining that the prior General Manager "was . . . a member of The Buffalo Club and [] sponsored the wedding of at least one employee"). In any event, offering a courtesy like this to an employee would not make a club open to the public generally. *See Chicago Club*, 86 F.3d at 1436 (explaining that the club was private even though it allowed an employee to host an event without a sponsoring member).

members and their nonmember guests as a regular practice.  *See Chicago Club*, 86 F.3d at 1433 (explaining that, to determine whether a club is private, the EEOC considers "the extent to which it limits its facilities and services to *club members and their guests*") (emphasis added) (citing EEOC Policy Statement: Bona Fide Private Club Exemptions).

Finally, membership in the Club is limited even though the Club employs a membership director and even if the Club encouraged employees to assist in recruitment efforts.  Membership recruitment is a legitimate objective of a private club, and it is reasonable that the Club would want employees to assist in recruiting new members.  *See id.* at 1435 ("Prudently increasing membership to increase revenue while not abandoning selective membership practices exhibits nothing more than fiscal responsibility.").  The membership-selection process ultimately is driven by club members, and the Club's board of directors—not its employees—make membership decisions.  *See* Docket Items 46-12, 46-13, 46-15, 46-16.  Thomas offers no documents or other evidence supporting his assertion that the Club does not follow its own membership-selection policies, and his bare allegations are insufficient to defeat the Club's motion for summary judgment.  *See Kulak*, 88 F.3d at 71 ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

For all those reasons, this Court agrees with Judge Schroeder that the Club is a *bona fide* private membership club and that no issues of fact preclude that conclusion on summary judgment.  *See* Docket Item 60 at 11-12.  The Club's motion for summary judgment therefore is granted.

**CONCLUSION**

For the reasons stated above and in the RR&O, Thomas's motion to amend, Docket Item 42, is DENIED; Thomas's motion *in limine*, Docket Item 51, is DENIED; and the Club's motion for summary judgment, Docket Item 12, is GRANTED. Thomas's motion to file objections, Docket Item 64, and his requests for the appointment of council and to reconsider ADR are denied as moot. The complaint, Docket Item 1, is dismissed, and the Clerk of the Court shall close the file.

SO ORDERED.

Dated:   February 24, 2021
         Buffalo, New York

 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE
